UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No.

MARVIN FITZGERALD,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Daniel Kahn, Acting Chief, Fraud Section, Department of Justice, Laura Connelly, Trial Attorney, Leslie S. Garthwaite, Trial Attorneys, and the defendant, Marvin Fitzgerald, individually and by attorney Robert Webb, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### Charges

2. The defendant has been charged in a one-count information, which alleges a violation of Title 18, United States Code, Section 1001.

3. The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full in the information, attached hereto as Attachment A.

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in Attachment A. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment B beyond a reasonable doubt. The defendant admits that these facts are true and correct, and establish his guilt beyond a reasonable doubt.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in this offense.

## Penalties

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: five (5) years and $250,000. The count also carries a mandatory special assessment of $100 and a maximum of three (3) years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraphs 27 and 28 of this agreement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## Elements

9. The parties understand and agree that in order to sustain the charge of false statements as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant concealed and covered up a fact by trick, scheme or device; and
> Second, the fact was material; and
> Third, the defendant concealed and covered up the material fact in a matter within the jurisdiction of the executive branch of the government of the United States.

2

## Sentencing Provisions

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth Attachment A. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided

3

false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the information is six (6) under Sentencing Guidelines Manual § 2B1.1(a)(2).

### Specific Offense Characteristics

17. The parties agree that there are no specific offense characteristics applicable to the offense.

### Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but

4

not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### Financial Matters

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and

all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 45 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest and cooperate in the liquidation of any such assets.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

27. The parties agree that the offense does not require payment of restitution.

28. The defendant agrees to pay restitution as ordered by the sentencing court. The defendant agrees to cooperate in efforts to collect any restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### Forfeiture

29. The defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained from the offense.

30. The defendant acknowledges that as part of his sentence, the Court will decide, by

a preponderance of the evidence, whether the government has established the requisite nexus between the offense and any specific property alleged to be subject to forfeiture and the amount of a personal money judgment he must pay.

### Defendant's Cooperation

31. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from the applicable sentencing guideline range. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

### Defendant's Waiver of Rights

32. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

7

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is

8

waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

36. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations.

### Further Civil or Administrative Action

37. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict

rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## General Matters

38. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

41. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## Effect of Defendant's Breach of Plea Agreement

42. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a

10

result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## Voluntariness of Defendant's Plea

43. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## Acknowledgements

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 10/30/2020

MARVIN FITZGERALD
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 30 Oct 20

ROBERT WEBB
Attorney for Defendant

For the United States of America:

Date: 10/30/2020

Leslie S. Garthwaite
LAURA CONNELLY
LESLIE S. GARTHWAITE
Trial Attorneys

12

# Attachment A

**THE UNITED STATES ATTORNEY CHARGES THAT:**

## COUNT ONE
### False Statements
### 18 U.S.C. §§ 1001(a) and 2

1. In or about July 2020, in the State and Eastern District of Wisconsin and elsewhere,

**MARVIN FITZGERALD ("FITZGERALD"),**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, the Federal Bureau of Investigation ("FBI"), those being: on or about July 9, 2020, **FITZGERALD** made the following materially false statements to federal law enforcement officers during the course of an active investigation into Paycheck Protection Program ("PPP") loans, including one made by New Beginnings Family Services LLC ("New Beginnings"), knowing that the statements were false when made, including:

   a. That someone named "Coo" approached him about getting a forgivable loan for New Beginnings, but that he did not submit any loan paperwork or follow through on the opportunity; and

   b. That he did not open a bank account for New Beginnings.

All in violation of Title 18 United States Code, Sections 1001(a) and 2.

## Attachment B

The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

*The Paycheck Protection Program*

1.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2.  In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications, including that the business was in operation on February 15, 2020, in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

3.  A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration (SBA). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

4.  PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

5.  The PPP is overseen by the SBA, which is headquartered at 409 3rd Street SW, Washington, D.C. 20416, and has authority over all loans. Individual PPP loans, however, are issued by private approved lenders (most commonly, banks and credit unions), which receive and process PPP applications and supporting documentation, and then make loans using the lenders' own funds.

6.  Bank 1 is an SBA-approved lender headquartered in Green Bay, Wisconsin.

14

*The Economic Injury Disaster Relief Program*

7. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

8. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

9. In order to obtain an EIDL and advance, a qualifying business had to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant also had to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

10. EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

**Relevant Individuals and Entities**

11. The defendant was a citizen of the United States and resident of Wisconsin.

12. Co-Conspirator 2 (CC-2) was a resident of Wisconsin. On or about June 23, 2015, CC-2 created and organized New Beginnings Family Services LLC ("New Beginnings"), a limited liability company located in Milwaukee, Wisconsin. On or about April 13, 2020, New Beginnings was administratively dissolved. On or about May 1, 2020, New Beginnings was restored to good standing. On or about May 21, 2020, paperwork was filed with the State of Wisconsin Department of Financial Institutions ("WIDFI") naming the defendant as the new registered agent of New Beginnings. As of February 15, 2020, New Beginnings did not have any employees for whom it paid salaries or payroll taxes, or independent contractors as reported on an IRS Form 1099-MISC.

13. Co-conspirator 4 (CC-4) was a resident of Wisconsin and the owner of Rebels Paris LLC ("Rebels"). Rebels was a Wisconsin limited liability company located in Milwaukee, Wisconsin. As of February 15, 2020, Rebels did not have any employees for whom it paid salaries or payroll taxes, or independent contractors as reported on an IRS Form 1099-MISC.

15

### *The Fraudulent New Beginnings PPP Loan Application*

14. At CC-2's direction, on or about May 22, 2020, the defendant opened a bank account at Bank 1 for New Beginnings.

15. On or about May 24, 2020, CC-2 provided the defendant with a fraudulent PPP loan application for New Beginnings and the defendant submitted it to Bank 1. Included with the loan application package were (1) an SBA Form 2483 PPP Borrower Application Form; and (2) five IRS Forms 941 (Employer's Quarterly Federal Tax Returns) purportedly reflecting New Beginnings' payroll data from January 2019 to March 2020. The New Beginnings PPP application submitted to Bank 1 falsely stated that New Beginnings' average monthly payroll was $92,000 and that the company had 28 employees. The defendant did not review the loan package before it was submitted to the bank. The New Beginnings loan application was denied.

### *The Fraudulent Rebels PPP Loan Application*

16. The defendant, at times, resided with Co-Conspirator 4 (CC-4). In or around May 2020, CC-2 contacted the defendant and asked him if he knew anyone with a limited liability company. At CC-2's request, the defendant connected him with CC-4, who he knew to own Rebels. CC-2 contacted CC-4 about obtaining money through a PPP loan application for Rebels, also through Bank 1. On or about May 13, 2020, using information provided by CC-4, CC-2 submitted a PPP loan application for Rebels, requesting $155,000. The PPP loan application for Rebels was funded on or about May 18, 2020.

17. On or about May 20, 2020, CC-4 paid the defendant approximately $20,000 from Rebel's PPP loan proceeds.

### *Fraudulent EIDL Application*

18. In or around July 2020, CC-4 approached the defendant about an opportunity to get a $10,000 grant with the SBA. CC-4 told the defendant that he would have to pay half of the money to an unknown individual for assisting in getting the grant. The defendant provided his personal information to CC-4, to include his social security number, date of birth, and bank account information.

19. On or about July 2, 2020, an EIDL application was submitted to the SBA which falsely claimed that the defendant owned and operated a sole proprietorship in his name. The application also falsely claimed that the defendant had ten employees.

20. On or about July 7, 2020, the defendant received the $10,000 SBA EIDL advance in his bank account. On or about July 8, 2020, the defendant withdrew the $10,000 advance from his account in cash and provided CC-4 with $5,000 to pay the individual who applied for the loan, as agreed upon in advance.

*False Statements to Law Enforcement*

21. On or around June 7, 2020, Bank 1 froze the accounts for New Beginnings and Rebels. Upon learning that the accounts were frozen, the defendant, CC-2, and CC-4 discussed providing a false story to Bank 1 and law enforcement about the accounts and loan applications. After the discussion, CC-2 provided the defendant with certain of the loan application materials and upon reviewing them, the defendant realized that the loan contained false statements about New Beginnings.

22. On or about July 9, 2020, the defendant was interviewed by phone by law enforcement officers from the Federal Bureau of Investigation and was asked about the New Beginnings loan application. The agents identified themselves as federal law enforcement agents and represented to the defendant that they were conducting an investigation into the New Beginnings loan application. During the interview, the defendant falsely identified an individual named "Coo" as the person who told the defendant about the possibility of obtaining a loan from a bank for New Beginnings that could be forgiven. According to the defendant, "Coo" told him that he could get the defendant the loan in exchange for a fee of $25,000. The defendant falsely told law enforcement that after looking into the loan opportunity, he backed out of the deal. The defendant also falsely stated that he had not opened a bank account for New Beginnings. At the time he made these statements to law enforcement, the defendant knew they were false.

23. On or about July 17, 2020, law enforcement again interviewed the defendant and he again falsely claimed that while he was approached about the opportunity to obtain a PPP loan for New Beginnings, he declined the offer. At the time he made this statement to law enforcement, the defendant knew it was false.